UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| CITY OF SPEARFISH, a South Dakota Municipal Corporation, and ELKHORN RIDGE MANAGEMENT, LLC, a South Dakota Limited Liability Company,<br>Plaintiffs,<br><br>v.<br><br>DUININCK, INC., f/k/a/ DUININCK BROS., INC., d/b/a DBI, a Minnesota Corporation,<br><br>Defendant and Third-Party Plaintiff,<br><br>v.<br><br>AMERICAN TECHNICAL SERVICES, INC., and WYSS ASSOCIATES, INC.,<br><br>Third-Party Defendants. | 5:14-CV-05039-KES<br><br>MEMORANDUM OPINION AND ORDER |

Defendant and third-party plaintiff, Duinink, Inc. (DBI), moves for summary judgment on the breach of contract claim asserted by plaintiffs, City of Spearfish and Elkhorn Ridge Management, LLC. Docket 29. Plaintiffs move for partial summary judgment as to liability against DBI. Docket 47. Third-party defendants, American Technical Services, Inc. (ATS), and Wyss Associates, Inc., move for summary judgment on the claims asserted by DBI. Docket 36; Docket 37. For the following reasons, DBI's motion is granted in

part. Plaintiffs' motion is denied. Wyss's motion is granted, and ATS's motion is denied.

## BACKGROUND

On June 18, 2007, plaintiffs[1] formed an agreement with DBI to construct the Elkhorn Ridge Golf Course in Spearfish, South Dakota. The agreement established that DBI was the general contractor and that Wyss Associates was the landscape architect for the golf course. This dispute revolves around the pond in front of the green on the 6th hole—it has leaked on at least four occasions over the past five years.

During construction of the area dedicated for the pond, excavators encountered gypsum. Gypsum is a type of soil known to deteriorate or dissolve when it encounters water. Due to the discovery of gypsum, the parties hired ATS to perform soil borings and to obtain an opinion regarding the impact gypsum may have on the project. Based on ATS's recommendation, the parties amended the construction agreement to include installation of a synthetic liner at the base of the pond to prevent leakage. DBI hired Colorado Lining International, Inc., to install the synthetic liner. Before the synthetic liner was installed, DBI constructed a drainage system of drain tile and a pipe that extended from the green on the 6th hole to the area excavated for the pond.

Colorado Lining installed the synthetic liner at the base of the pond. But the parties dispute the exact chain of events associated with the installation. DBI asserts that Colorado Lining modified the drainage system extending from

[1] The City of Spearfish owns the property, and Elkhorn manages the golf course.

the green on the 6th hole by cutting the pipe and adding a non-water tight coupling behind the synthetic liner. Plaintiffs dispute that Colorado Lining modified the pipe. Colorado Lining completed its work on the synthetic liner in the summer of 2008. DBI completed construction of the golf course in 2009.

In spring of 2011, plaintiffs notified DBI that the pond liner had failed and the pond was leaking. The parties generally agree that, prior to spring of 2011, water leaked under the liner and encountered the gypsum beneath the pond. Eventually water dissolved the gypsum and created voids under the liner that caused the liner to fail.

The liner was repaired in May of 2011 and again in November of 2011 after a second leak. Also in November of 2011, the parties discovered that the coupling in the pipe located behind the liner was non-water tight. The parties determined that the coupling was a source of water leakage that contributed to the deterioration of gypsum beneath the pond. DBI decided to raise the drain tile and pipe above the water level of the pond, and the pond liner was repaired in March 2012.

A third leak occurred in May of 2012. As a result, Colorado Lining performed extensive repairs to the liner. On July 5, 2012, Elkhorn entered into a release with Colorado Lining. Elkhorn released all claims against Colorado Lining, known or unknown at that time, arising from the construction of the pond. In 2013, the pond leaked yet again. The liner leaked near the intake area of the pond due to deficient welds in the liner.

As a result of these issues with the pond, plaintiffs filed suit against DBI on April 29, 2014, in Lawrence County, South Dakota. DBI removed the case to this court under 28 U.S.C. § 1441 and relied upon diversity of jurisdiction under 28 U.S.C. § 1332. Docket 1. DBI filed a third-party complaint against ATS and Wyss on June 4, 2014. Docket 4.

**STANDARD OF REVIEW**

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute."
Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts

which create a genuine issue for trial.'" *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts and inferences drawn from those facts are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

### I. DBI's Motion for Summary Judgment.

DBI moves for summary judgment on plaintiffs' breach of contract claim by arguing that the release executed between Elkhorn and Colorado Lining also precludes DBI's liability. DBI relies upon *Krause v. Reyelts*, 646 N.W.2d 732 (S.D. 2002), to support its position. Plaintiffs argue that *Krause* is inapplicable here and that the release between Elkhorn and Colorado Lining has no effect on the breach of contract claim against DBI.

In *Krause*, the parties entered into a contract for construction of a home. *Id.* at 733. The contractor utilized a subcontractor to perform excavation work. *Id.* After completion of the home, the homeowners noticed multiple problems associated with the subcontractor's work. *Id.* The homeowners and general contractor later signed a release in favor of the subcontractor in exchange for payment from the subcontractor's insurance company. *Id.* Further problems came to light after executing the release, and the homeowners brought multiple claims against the general contractor, including breach of contract. *Id.* at 734.

The state circuit court granted summary judgment in favor of the defendant general contractor, and the Supreme Court of South Dakota affirmed the decision by finding that release of the subcontractor also barred plaintiff's claims against the general contractor. *Id.* In reaching this conclusion, the *Krause* court relied upon *Estate of Williams ex rel. Williams v. Vandeberg*, 620 N.W.2d 187 (S.D. 2000), which established that "a release of an agent is a release of the principal even when the release contains an express reservation [of applicability to the principal] and where the claim is premised on the [] act of the agent." *Id.* at 191. The following passage in *Krause* examines proper application of the rule identified in *Williams*:

> [W]e start by noting that [subcontractor] was hired by [general contractor] to perform the [] work. Therefore, any liability of [general contractor] arising from [subcontractor's] work is premised on [general contractor's] vicarious liability. The release, however, clearly stated that [plaintiff] released [subcontractor] from 'any and all claims' arising from [subcontractor's] work. Therefore, under *Williams*, the trial court properly held that the release of [subcontractor] bars [plaintiff] from bringing a vicarious liability claim against [general contractor] for [subcontractor's] defective work.

*Krause*, 646 N.W.2d at 735.

The court finds that *Krause* is directly applicable in this case. Like in *Krause*, construction of the golf course stemmed from a written construction contract. Also like in *Krause,* plaintiffs executed a release of liability with the subcontractor, Colorado Lining, after additional work was completed to fix the subcontractor's original work on the project. And as in *Krause*, plaintiffs seek to recover on a breach of contract claim against the general contractor.

Despite these parallels, plaintiffs maintain that *Krause* is inapplicable here. Plaintiffs attempt to distinguish *Krause* by arguing that their breach of contract claim relies solely upon DBI's conduct and not on a theory of vicarious liability. Plaintiffs cite §§ 3.3.1 and 3.3.2 of the contract and two affidavits of DBI employees as evidence of DBI's direct liability under the contract.

In relevant part, section 3.3.1 provides the following: "The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract[.]" Docket 48-1. Section 3.3.2 states that "[t]he Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors." *Id.* As to the statements made by DBI employees, plaintiffs cite the affidavits of Charles Lyford and Travis Quisberg. Lyford's affidavit establishes that he was unaware that Colorado Lining spliced the drain tile behind the liner and that he would not have authorized such action. Docket 32. Quisberg's affidavit mirrors Lyford's affidavit and also states that he was not present for the entire course of Colorado Lining's work on the liner. Docket 33. Plaintiffs believe these contractual provisions and affidavits establish that their breach of contract claim is grounded only in DBI's failure to effectively supervise and ensure

proper construction of the pond and drainage system, and not vicarious liability. The court disagrees.

First, the claims against the contractor in *Krause* alleged both direct and vicarious liability. *Krause*, 646 N.W.2d at 733. As is the case here, the allegations included a claim for breach of contract. *Id.* The *Krause* court specifically found that its prior decision in *Williams* applied to a case principally involving contractual liability and it was not limited to the law of contribution among joint tortfeasors. *Id.* at 735. Thus, the Supreme Court already rejected plaintiffs' argument that the breach of contract claim against the general contractor survives.

Second, §§ 3.3.1 and 3.3.2 of the contract provide that DBI was in charge of the construction project, that it would supervise all subcontractors and employees, and that it would be responsible for their acts or omissions. In other words, the contract recognizes that DBI is vicariously liable for the acts or omissions of its subcontractors and employees. *See Kirlin v. Halverson*, 758 N.W.2d 436, 444 (S.D. 2008) (stating that vicarious liability, or respondeat superior, establishes that the principal is liable for the actions of its agents and employees that are committed within the scope of employment). An examination of plaintiffs' complaint confirms that vicarious liability is applicable here because the complaint seeks recovery for work at least partially completed by Colorado Lining:

> DBI breached its obligations under the Agreement by failing to *perform the labor* and to provide the materials necessary for the proper execution and completion of Work [sic] it contracted to

> perform in connection with the drainage of the 6th green of the Elkhorn golf course*, the construction of the pond at that location, the installation or welds of the pond liner at another location* and by failing to properly investigate and to timely correct said nonconforming Work [sic].

Docket 1-1 at 3 (emphasis added). Thus, because the contract and cause of action are grounded, at least in part, on DBI's vicarious liability from Colorado Lining's work on the project, the only remaining issue is whether the release executed between Elkhorn and Colorado Lining is sufficiently similar to *Krause* in order to preclude DBI's liability.

In *Krause*, the release provided in part: "Reyelts Construction and *Wayne Krause* . . . hereby release and discharge Melvin Geidel Excavation . . . *from any and all claims*, demands, damage, lawsuits, and causes of action *arising from Melvin Geidel Excavation's work*[.]" *Krause*, 646 N.W.2d at 733 (emphasis in original). Here, the release provides in part that

> Releasor hereby releases and discharges Releasee *from any and all claims, demands, and causes of action that Releasor ever had or that Releasor has or may have on the date of this instrument, known or unknown, arising from the construction of the retention pond.* It is understood that this Release shall inure to the benefit of the Releasee, its successors, assigns and insurers, and it shall bind Releasor and its assigns and successors in interest to the above described real property.[2]

Docket 35-1 at 7 (emphasis added). Both releases articulate that the plaintiff releases the subcontractor from any and all claims and causes of action stemming from work completed by the subcontractor. Because both releases contain similar operative language, the court finds that the holding in *Krause*

[2] The release defines "Releasor" as Elkhorn Ridge Golf Management, LLC. Docket 35-1 at 7. It defines "Releasee" as Colorado Lining International, Inc. *Id.*

applies here and the release of liability stemming from Colorado Lining's acts or omissions also applies to DBI.

Consistent with the *Krause* holding, however, the court also finds that additional factual development is necessary to determine whether an entity other than Colorado Lining performed any of the work that caused leaks in the synthetic liner. *See Krause*, 646 N.W.2d at 735 (remanding case for a factual determination as to whether general contractor performed deficient work that was distinct from work completed by subcontractor). As an example, plaintiffs' expert, Scott Kenner PhD, opines that the pipe itself was the incorrect component for this drainage system and it contributed to water leakage. *See* Docket 39-3. The record indicates the DBI installed the pipe and drainage system. Based on this record, there are questions of fact as to whether any deficient construction is attributable to DBI that does not arise from work completed by Colorado Lining. Thus, the court grants DBI's motion in part as to work completed by Colorado Lining; the court denies DBI's motion in part as to all other alleged deficiencies.

**II. Plaintiffs' Motion for Partial Summary Judgment.**

Plaintiffs move for partial summary judgment as to liability on the grounds that DBI breached its contractual duties under §§ 3.3.1 and 3.3.2 of the contract. Plaintiffs rely upon the affidavits of two DBI employees, Charles Lyford and Travis Quisberg. These affidavits merely confirm that it is unclear how the non-water tight coupling was constructed behind the synthetic liner and that Lyford and Quisberg were not physically present for the entire

construction of the liner. The court finds that these affidavits do not establish as a matter of law that DBI breached the contract. Thus, the motion is denied.

## III. Wyss Associates and American Technical Services' Motions for Summary Judgment.

DBI alleges in its third-party complaint that Wyss and ATS were negligent and that DBI is entitled to either indemnification or contribution from both third-party defendants. Docket 4. DBI alleges that Wyss and ATS were negligent in "failing to address the gypsum formations in the irrigation pond, and [in] failing to take appropriate steps to disclose that knowledge and information to [DBI] and the Plaintiffs[.]" *Id.* at 5-6. "In order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." *Johnson v. Hayman & Assocs., Inc.*, 867 N.W.2d 698, 702 (S.D. 2015).

### A. DBI failed to utilize expert testimony to establish Wyss's standard of care.

Wyss argues that summary judgment is appropriate because DBI failed to offer expert testimony in support of its negligence claim. Specifically, Wyss asserts that DBI is unable to provide any evidence that Wyss breached the standard of care for a landscape architect because there is no expert testimony in the record to establish how a landscape architect should respond when encountering gypsum.

"There is no requirement that a party produce expert testimony when the question is within a layperson's knowledge." *Luther v. City of Winner*, 674 N.W.2d 339, 344 (S.D. 2004) (citing *Bland v. Davison Cty.*, 566 N.W.2d 452,

461 (S.D. 1997)). But "expert testimony is required to establish the standard of care for a professional unless the issue is within the common knowledge of the jury." *Id.* (citing *Mid-Western Elec., Inc. v. DeWild Grant Reckert & Assocs. Co.*, 500 N.W.2d 250, 255 (S.D. 1993)); *see also Magbuhat v. Kovarik*, 382 N.W.2d 43, 46 (S.D. 1986).

The Supreme Court of South Dakota's opinion in *Luther* sheds sufficient light on this analysis. In *Luther*, the Court reviewed whether improper sidewalk design constituted a subject that fell within a layperson's common knowledge. *Luther*, 674 N.W.2d at 345. The Court compared sidewalk design with an issue more common to an ordinary juror, sidewalk markings. *Id.* at 346. After noting that a juror could review questions of fact pertaining to sidewalk markings, the Court held that a "typical lay person would have no idea how to design and construct a sidewalk[.]" *Id.* at 346. Because of the complexity of sidewalk design, the Court affirmed the grant of summary judgment based on the plaintiff's failure to offer expert testimony to establish the defendant's standard of care. *Id.* at 345. Here, a lay person would have no insight regarding the appropriate response to encountering gypsum during construction of a pond on a golf course. Expert testimony is necessary to explain not only how gypsum affects construction of a pond and green area but also how a professional landscape architect should respond to such a finding.

Even though DBI chose not to designate its own expert pertaining to the negligence claim against Wyss, DBI argues that the record contains sufficient expert testimony to establish that Wyss breached the standard of care. DBI

first cites the deposition testimony from Dave Bressler, a civil engineer and former employee of ATS. Bressler testified that he was unaware of design plans to place a green by the pond. Docket 45-5 at 7. But had he known about the plan, Bressler would have either recommended that designers increase the distance between the green and pond, or he would have suggested alternative methods to ensure that water drainage from the green did not interact with the gypsum beneath the pond. *Id.* The court accepts that Bressler is highly qualified in soil analysis and engineering; however, Bressler's testimony only provides evidence about how he would have responded under the circumstances. The testimony does little to help a jury determine how a landscape architect should respond to gypsum under these circumstances.

Second, DBI cites testimony from Mike Ollerich, a professional engineer and owner of ATS. DBI cites the following portion of Ollerich's expert report: "Whomever changed the design and allowed the pipe designated as ASTMF405 to be used is at fault. This pipe is never used in a design where water is under pressure." Docket 39-4 at 3. In addition to this cited passage, Ollerich's report offers ample testimony pertaining to drainage pipes and various risks associated with water leakage. *See* Docket 39-4. Similar to the proposed testimony from Bressler, the court accepts that Ollerich's testimony is relevant to engineering and construction of a drainage system, but it fails to provide any evidence relating to the standard of care for a landscape architect.

The court's scheduling order provided that DBI should have designated an expert by September 15, 2015. Docket 24 at 1. DBI elected not to do so.

DBI attempts to offer testimony from ATS's experts pertaining to soil analysis and drainage systems, but DBI fails to show how such testimony is relevant to the standard of care for a landscape architect under these circumstances. Because the subject matter here—the proper architectural response to gypsum—is outside the common knowledge of a jury, *Luther* establishes that DBI must offer expert testimony to establish the standard of care for Wyss. DBI has failed to offer this testimony. Thus, the court finds that DBI has not met its burden of establishing that Wyss breached the standard of care, and it grants Wyss's motion for summary judgment.

**B. Disputes of material fact preclude a finding that ATS operated in accordance with the standard of care.**

In support of its motion for summary judgment, ATS argues that the undisputed facts establish that it met the standard of care for a soil expert. To prevent water leakage onto the gypsum, ATS recommended either the use of a synthetic liner or a compacted layer of clay beneath the pond. ATS argues that this response was appropriate under the circumstances.

DBI cites expert testimony to contradict ATS's position. DBI relies upon its designated expert, Ralph Lindner, President of GeoTek Engineering & Testing Services, Inc. Lindner's expert report articulates that the "synthetic liner is designed to keep water only in the pond and not protect the soil (Spearfish Formation) from moisture on the underside of the liner which can be created from irrigation, French drains or a leakage joint in a pipe." Docket 44-2 at 3. Additionally, Lindner asserts that "construction and operation of a modern irrigated golf course, (with or without an irrigation pond) and grade

changes can change the surface and subsurface of water migration and negatively affect karstic gypsum.” *Id.*

Construed in a light most favorable to DBI, Lindner’s report provides evidence that a soil expert should have provided notice to contractors and plaintiffs that gypsum soil underneath the pond could be exposed to water through sources other than leakage from the pond itself. Because of that risk, a reasonable jury could conclude that ATS’s failure to account for other sources of water constituted a breach of the standard of care that contributed to damage to the synthetic liner under the pond. Thus, the court denies ATS’s motion for summary judgment on the negligence claim asserted in DBI’s third-party complaint.

**C. Comparative fault applies in this case.**

DBI argues that it is entitled to a jury determination regarding the comparative degrees of fault among DBI, Wyss, and ATS. DBI also argues that it is entitled to a reduction in damages for which it is potentially liable because Wyss and ATS executed settlement agreements and releases with Elkhorn. DBI relies upon *Schick v. Rodenburg*, 397 N.W.2d 464, 465 (S.D. 1986).

In *Schick*, the Supreme Court of South Dakota reviewed whether settlements from alleged tortfeasors should be credited against the ultimate judgment. *Id.* The dispute in *Schick* stemmed from a car accident where the settling party was the estate of the defendant-driver and the defendant-driver’s insurance company; the nonsettling parties were Chrysler and Ford, which

were potentially liable on breach of warranty and negligence claims. *Id.* at 465. The Supreme Court provided the following analysis:

> The *Degen*, *Duncan*, and *Carr* cases assume that once the allegation is made that one or more parties are or may be joint tort-feasors, and settlement is made with one of them, then any ultimate verdict against the nonsettling parties must be reduced by the amount of the settlement, regardless of whether the settler was liable to the plaintiff or not. Therefore, in reliance on SDCL 15-8-17[3] . . . we find that Chrysler and Ford as nonsettling parties are entitled to credit for the greater of the settlement State Farm made on behalf of Rodenburg, or Rodenburg's percentage of liability as ultimately determined.

*Id.*

The same rationale applies here. DBI alleged in its third-party complaint that ATS and Wyss were negligent and that DBI is entitled to either indemnity or contribution from both third-party defendants. Docket 4. In response to the third-party complaint filed by DBI, ATS and Wyss entered into settlement agreements and releases with Elkhorn. *See* Docket 45-1; Docket 45-2. The settlement agreements recognize that both third-party defendants are alleged to be joint tortfeasors or joint obligors and that the sum of money paid to Elkhorn "shall be the full extent of the pro rata share of settling third-party defendant's [] obligation, liability, or fault for damages to Elkhorn." Docket 45-1 at ¶6; Docket 45-2 at ¶7. Thus, because *Schick* establishes that the "ultimate verdict against the nonsettling parties must be reduced by the amount of settlement,"

[3] SDCL 15-8-17 provides:
A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

DBI is entitled to a reduction of damages "regardless of whether the settler was liable to the plaintiff or not." *Schick*, 397 N.W.2d at 468.

Because the court grants summary judgment on the negligence claim in favor of Wyss, the court finds that any recovery plaintiffs obtain against DBI shall be reduced by $40,000, the amount Wyss paid Elkhorn in exchange for the release. *See* Docket 45-2 at ¶1. As to ATS, because the court denies its motion for summary judgment, the court finds that any recovery that plaintiffs obtain against DBI shall be reduced in accordance with the jury's determination as to ATS's comparative fault or the $10,000 it paid plaintiffs in exchange for the release. *See* Docket 45-1 at ¶1.

**CONCLUSION**

Based on the foregoing, it is

ORDERED that Duininck Inc.'s motion for summary judgment (Docket 29) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that plaintiffs' motion for partial summary judgment (Docket 47) is DENIED.

IT IS FURTHER ORDERED that Wyss Associates, Inc.'s motion for summary judgment (Docket 37) is GRANTED.

IT IS FURTHER ORDERED that American Technical Services, Inc.'s motion for summary judgment (Docket 36) is DENIED.

Dated August 3, 2016.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE